UNITED STATES v. NATIONAL CITY BANK OF NEW YORK et al.

District Court, S. D. New York.

May 3, 1941.

Mathias F. Correa, U. S. Atty., of New York City (Irvin C. Rutter, Sp. Asst. to the Atty. Gen., and Noel Hemmendinger, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Shearman & Sterling, of New York City, for defendant National City Bank of New York.

LEIBELL, District Judge.

This is a motion by plaintiff pursuant to Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for an order requiring defendant, National City Bank of New York, to produce and permit the inspection and copying of documents.

The complaint, sworn to April 27, 1936, alleges in substance that in 1917 and thereafter all Russian corporations, companies, societies and associations were nationalized pursuant to duly enacted decrees of Soviet Russia, whereby Soviet Russia became the owner of all assets, wherever situated, of all such Russian corporations and societies.

In 1933, the United States recognized the Soviet Government, and title to all assets formerly owned by Russian Corporations and other organizations was assigned to the United States on November 16, 1933. Allegedly, in November, 1917, defendant, National City Bank, had on deposit to the credit of Russian corporations and other organizations substantial sums of money, and the present suit is brought for payment and accounting to the United States, as assignee of the Soviet Government, of all sums to which the Soviet Government became entitled by its nationalization decrees of 1917.

National City Bank in 1917 had more than 250 accounts due to Russian organizations or to the Russian Government or its agencies. The records concerning which an inspection is sought are grouped generally in the notice of motion as follows:

1. The records of all accounts with the National City Bank as of November, 1917, in the names or held on behalf of all Russian organizations of every description and all accounts in the name of or held on behalf of any Russian Government preceding the present Government of Russia, and the records showing the disposition of deposits up to the present time, or until payment thereof by the bank to any person;

2. All records made in connection with debits and credits to the foregoing accounts, including all vouchers, minutes or other records of any board or committee of the bank;

3. All records relating to the opening of the accounts referred to in item 1;

4. All ledger books containing any record of the accounts referred to in item 1;

5. All records pertaining to Russian Government 5% notes in the possession or control of defendant bank; and

6. All papers marked for identification in the course of an examination before trial in the action entitled, United States of America and Max M. Hirson, Receiver of the Assets of All Russian Zemsky Union v. National City Bank et al., Civ. 1-130.

The present suit instituted April 27, 1936, is one of several in which the United States is interested as a party plaintiff in asserting whatever title it may have acquired by reason of the assignment of November 16, 1933. It differs from other suits now pending, in that it seeks an accounting with respect to all Russian accounts held by defendant bank rather than a recovery of particular accounts.

In its answer, the bank not only has denied the validity of the assignment to the

United States, but also has claimed two set-offs, one of which is based on the bank's holdings of 5% treasury notes, issued by a former Russian Government on May 1, 1917.

On this motion, the United States argues that the discovery is necessary in order that it may ascertain the character and amount of Russian assets held by the bank and the character and amount of the bank's alleged set-off. Admittedly, it knows the names of some of the accounts, but it is stated that the names of others are peculiarly within the knowledge of defendant. The United States participated in an examination conducted in the Zemsky Union case, supra, and during the course of that examination it was disclosed that various transfers had occurred in the bank's Russian accounts, which indicate to the Government that the bank may have Russian deposits concerning which the United States has no specific knowledge. It is also urged that the Government is entitled to know the amount of Russian notes held by the bank in November, 1917, in order to determine whether or not the total Russian assets held by the bank are in excess of the alleged set-off.

The bank strongly opposes the Government's motion and has submitted voluminous affidavits and briefs in opposition. It makes three principal points:

■ 1. That the United States is not entitled to discovery until it has first established its rights to the assets under the assignment. I do not think that this contention has any merit. It would seem impossible in this case, though it may be possible in patent cases, to separate the facts essential to determine liability from those necessary to measure the amount of the recovery. In Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496, the Court pointed out that the principle here advocated by defendant bank applies only in situations in which a suit is triable in separate parts, one affecting liability and the other affecting the measure of recovery. There is nothing in the F.R.C.P. that would change this principle. It may be that different circumstances of deposit will affect the scope and applicability of the Russian Nationalization decrees. At any rate the Government's assignment has already been before our highest court. United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134.

2. That it would be burdensome and oppressive if the bank were required to produce the documents now demanded by the Government. In an affidavit submitted for the bank it is stated generally that the old records of the bank are stored on ten floors in a warehouse taking up a large part of a city block. In a reply affidavit submitted after request of the Court, an officer of the bank states that he estimated that it would cost about $18,435 to collect the documents now demanded. Apparently most of that work would be entailed in collecting vouchers and the limited granting of this motion as herein indicated will avoid most of that cost. The bank also asserts that the Government has already had a complete inspection in the Zemsky Union case and, with respect to accounts in the name of the former Russian Government, has available to it information furnished by the former Russian Government. If that is so, I think the Government's representatives will avoid any duplication of their own work.

■ 3. That the Government has no case and in particular that it does not intend to prosecute this action. This argument, as I see it, attacks the good faith of the Government in making the motion, and I am not impressed by this contention. The same argument was made in United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134, and rejected by the Supreme Court. If the government has no case, the rules provide for appropriate motions, such as motions to dismiss and motions for summary judgment, and by these motions the bank can test this point, if it is so advised.

■■ Upon any motion for an inspection and discovery pursuant to Rule 34, F.R.C.P., the moving party must show good cause and that the documents sought to be inspected are material and relevant to the case. I think that here the United States has shown good cause at this time for an inspection and discovery of at least a considerable part of the documents. As already stated, the circumstances of deposit are important and from the papers submitted upon the motion a showing is made that the Government may not be able to prove its case in this proceeding, on the issue of liability, unless there are made available to the government at least the following papers:

1. The records showing all accounts with the National City Bank, and the condition thereof, during the month of No-

vember, 1917, and the month of November, 1933, in the name of Russian corporations, companies, societies and associations, partnerships or business units, or in the name of or held on behalf of any Russian Government predecessor of the present Government of Russia or any subdivision, department, institution or agent of such predecessor Government.

2. All records relating to the opening of such accounts no matter when opened and to the closing of said accounts, no matter when closed;

3. All records of every kind, including books of accounts, checks, bills, correspondence, vouchers, memoranda, minutes of meetings and anything else in the possession or control of defendant bank pertaining or in any way related to Russian Government 5% Treasury Notes, issued on May 1, 1917, at any time owned by defendant bank, showing the time, manner and terms of purchase or other acquisition of these notes by defendant bank, and the time, manner and terms of their subsequent sale, if any, by defendant bank or other disposition thereof.

With respect to demand No. 1, however, the defendant bank should not be required at the present time to show all transactions in said accounts from November 30th, 1917, to the present or until payment thereof, but the bank should be required to show the condition of these accounts for the month of November, 1917, for the month of November, 1933, and when the accounts were closed, all as above indicated.

■ The above information and that hereinafter provided for should enable the United States to determine in most instances what assets purportedly passed to this Government pursuant to the assignment of November 16, 1933. The practice of banks, particularly large New York commercial banks, in keeping complete and readily accessible records, properly filed and indexed, is well known, and I do not believe that the production of this information will put any unwarranted or extreme burden upon the bank, considering the importance of this case.

■ In addition to the items hereinbefore listed, the bank should also furnish plaintiff with the following documents or statements concerning funds of former Russian Governments, and any subdivisions, departments, institutions or agents thereof:

(A) All records of the bank pertaining to such funds for the period from November 7th to December 1st, 1917. Apparently the bank prepared two statements of such funds, one of which was furnished to the former Russian Embassy in 1917, and there is said to be a discrepancy of approximately $700,000 between the two statements. Plaintiff believes that this part of the inspection will enable it to determine the nature of this discrepancy.

(B) The record of the account designated as "Compte Cheques" from December 1, 1917, to March 1, 1918. Entries continued to be made in this account between these dates, and plaintiff is entitled to know the nature of these entries.

(C) The bank should also designate each account in which was placed moneys received from any former Russian Government, and any subdivision, department, institution or agent thereof, to pay interest on various Russian governmental obligations, stating in each instance the particular obligations and the circumstances of the receipt of said moneys. It may be that some of these accounts, according to the circumstances of their creation, were or are trust funds for the payment of interest, and that title to them passed from the Russian Government immediately upon deposit.

The bank objects to furnishing the Government with the papers demanded in item 6, those marked for identification in an examination before trial in the Zemsky Union case. It seems to me that it would place no great burden upon the bank to collect these documents again and submit them to the Government for its inspection. It is impossible upon the basis of the affidavits herein to determine whether or not the Government has already had ample opportunity to inspect these documents, and no great harm will result from resolving this controversy in favor of a further inspection.

The motion is granted to the extent indicated. As to the items denied, leave is granted to the Government to renew its application, if, after it has inspected any of the documents which the bank is now directed to produce, the Government determines therefrom that there are other records which it must have in order to prepare this case for trial.

Submit order on notice in accordance with this opinion.